IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARREN HENDERSON,

     Plaintiff,                    No. 2:06-cv-01325 GEB EFB P

    vs.

T. FELKER, et al.,

     Defendants.          <u>ORDER</u>

     Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He claims that the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights when they executed and enforced certain policies regarding the treatment of diabetic inmates. Defendants have moved for summary judgment.

     The undersigned concludes that the opinion of a neutral expert is necessary to accurately determine whether the evidence shows triable issues of material fact such that this case must proceed to trial. Accordingly, the court will seek nominations for potential neutral experts from the parties and deny the summary judgment motion without prejudice to its renewal once the court has received the expert's report.

////

1

## I.     Background

This action proceeds on the verified amended complaint filed October 4, 2006.  Dckt. No. 16.  Claims currently remaining in the action are plaintiff's claims that defendants Dovey, Felker, and Roche executed and enforced unconstitutional policies pertaining to the treatment of diabetic inmates.  Dckt. No. 56 at 2.[1]  (Plaintiffs claims against other defendants and his claim against defendant Roche for alleged failure to provide medication have been dismissed.  *Id.*)

Specifically, plaintiff alleges that defendant Dovey is the Director of Corrections for the state of California and is responsible for "the overall operations" of each California prison, including High Desert State Prison ("HDSP"), where plaintiff was confined at the time he filed this action.  Dckt. No. 16 at 1-2.  Defendant Felker is the "superintendent" of HDSP and is responsible for its operations and the welfare of its inmates.  *Id.* at 2.  Defendant Roche is a medical doctor who was the Chief Medical Officer at HDSP at all times relevant to the complaint.  *Id.*

According to plaintiff, defendants adopted or enforced policies that were deliberately indifferent to his serious medical needs as a diabetic inmate.  Plaintiff describes his condition as follows:

> Plaintiff is an insulin depended [sic] diabetic with related complications, high blood pressure, a condition called neuropathy which causes poor blood flow, pain and numbness in the legs and feet.  It also places me at high risk for heart disease, stroke, infection and amputation.  Because of my condition I require daily access to a exercise yard [sic] to walk or run to increase the blood flow to my heart and legs.  I also require effective distribution of medications that improve and sustain quality in life, a special diet prepared by a medically trained dietician, and a emergency plan [sic] to prevent hypoglycemia while traped [sic] in a cell overnight.

*Id.* at 3.  Plaintiff alleges that he received such treatment in a prior institution but that, when he was transferred to HDSP on August 11, 2005, the needed treatments (exercise, medication, diet, and emergency plan) were stopped according to a screening policy in place at HDSP.  *Id.*  His

---

[1]Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

prescriptions for blood pressure and pain medication were discontinued. *Id.* No special diet was provided, nor any emergency snack, because HDSP, per policy, does not provide special diets or emergency snacks to diabetic inmates. *Id.* at 3-4. Further, HDSP policy only allowed inmates to access the yard for 1.5-2 hours five times per month. *Id.* at 4.

After complaining, plaintiff was seen by a doctor who prescribed blood pressure and pain medication (enalapril and neurontin, respectively). *Id.* Plaintiff received the enalapril on August 26, 2005. *Id.* Plaintiff received the neurontin on September 5, 2005, but was only given enough for one month. *Id.* at 5. He had to wait over 30 days for a refill, and asserts that he contined over that time suffering pain in his legs and feet. *Id.*

Plaintiff alleges that he developed an infection on one of his toes because of the lack of exercise to increase blood flow to his legs and feet. *Id.* at 6.

In sum, in the claims remaining in this action, plaintiff alleges that defendants are responsible for several policies, which together prevented him from receiving adequate treatment for his diabetes: (1) a policy to discontinue medications upon an inmate's transfer to HDSP; (2) a policy resulting in the erratic distribution of neurontin; (3) a policy to deny diabetic inmates a special diabetic diet; (4) a policy of inadequate yard-time for diabetic inmates; and (5) a policy depriving diabetic inmates of an emergency snack to treat hypoglycemia.

**II.   The Motion for Summary Judgment[2]**

In seeking summary judgment, defendants first argue that plaintiff lacks evidence that

---

[2] After defendants re-served their motion for summary judgment with the appropriate notice pursuant to *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998), *see* Docket No. 132, plaintiff indicated that he wished to rely on his previously-filed opposition. Dckt. No. 142. At the same time, however, plaintiff filed a "supplemental" opposition to defendants' statement of undisputed facts, with new supporting documents. *Id.* Defendants ask the court to either disregard plaintiff's previous opposition or to consider defendants' replies to both the prior opposition and the "supplemental" filing. Because the court will deny the summary judgment motion at this time without prejudice to its refiling, this issue is moot. If defendants elect to renew their motion for summary judgment, the court instructs plaintiff to file a single set of opposition papers in response. The court will not sift through multiple filings on the docket to attempt to piece together the opposition.

3

any defendant promulgated or implemented any of the above-summarized policies. Liability under § 1983 may be imposed on a supervisory official such as the defendants here if (among other things) the supervisor implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991). The undersigned will address defendants' contentions as to each alleged unconstitutional policy.

<u>Medication Continuity on Transfer.</u>  Defendants argue that the undisputed facts show no policy to discontinue inmate medications upon transfer to HDSP. Dckt. No. 134-3, Defs.' Stmt. of Undisp. Facts ISO Mot. for Summ. J. (hereinafter "DUF") 14. Instead, defendants argue, an inmate's treating physician decides whether to continue medications upon the inmate's transfer to the institution. *Id.* In response, plaintiff declares that defendants "ignored the mandated policy of continuity of medication upon transfer, by promulgating some policy (underground) that intentionally interfered with the way the continuity of medication for transferee[s] was to be provided." Dckt. No. 142 at 3. As support for this assertion, plaintiff cites to various policies that explicitly provide mechanisms to ensure that inmates' prescriptions are not interrupted upon transfer until they are seen by their primary care physicians. *Id.* at 28-37 (Ex. "BB") (see specifically pages 31 and 48-50). Plaintiff has not provided any evidence beyond his declaration of any "underground" policy to discontinue medications on transfer or that such a policy was promulgated or implemented by defendants.

<u>Medication Distribution.</u>  Defendants' motion does not address plaintiff's claim that defendants implemented or promulgated a policy that resulted in the erratic distribution of neurontin. *See* Dckt. No. 134-2 at 6-11.

<u>Diabetic Diet.</u>  Defendants argue that they were not responsible for setting the menus and diet plans at HDSP, but rather that such responsibility belonged to the Departmental Food Administrator. DUF 27. Plaintiff responds that defendant Roche had the authority to order medically-appropriate diets for inmates who needed them. Dckt. No. 142 at 10. While it is clear

4

that the Departmental Food Administrator set the menus at HDSP, it is unclear from the evidence provided by the parties who was responsible for the apparent policy at HDSP that diabetic inmates should eat the standard prison fare rather than receive special meals designed for diabetics.

Defendants assert that, regardless, the standard prison diet provided sufficient healthy foods for diabetics, who could simply decide not to eat any items that are unhealthy for diabetics to eat. DUF 28-34. Defendants contend that the standard prison diet contained 300 more calories than the minimum required by the average, moderately active adult to maintain proper nutrition. DUF 32. Defendants argue that, because of this surplus of calories, diabetic inmates would not suffer from having to remove certain items from the standard diet. *Id.* However, defendants have provided no evidence showing that the caloric content of those unhealthy items each day was equal to or less than 300. Plaintiff contends that he had to remove "an entire main course and a dessert." Dckt. No. 142 at 11. Plaintiff has submitted what appears to be the menu for an unknown week at the prison. *Id.* at 59. Defendant objects to plaintiff's assertions as unqualified medical opinion. Dckt. No. 4.

Yard Time for Diabetics. According to defendants, limited yard-time policies did not deprive diabetic inmates of needed exercise because such inmates could exercise in their cells. DUF 26. Plaintiff asserts that the cell is too small to walk, run, or play sports, measuring five-by-fifteen feet and containing a three-by-seven foot bunk, a four-foot-by-twenty-inches locker, a toilet/sink combination, and a two-by-three foot desk. Dckt. No. 142 at 4. According to plaintiff, "A person's body is too wide to do push ups; one has to slightly turn his body sideways to walk the 4' from the bed to the toilet so to avoid scraping his shoulders on the locker and bed." *Id.* While defendants object to a diagram plaintiff has provided of his cell on foundational grounds, they do not argue that the diagram is inaccurate. Dckt. No. 145-1 at 5. Nor do they offer an alternative.

////

For the first time in their supplemental reply, defendants argue that plaintiff's complaint does not contain an exercise claim. Dckt. No. 145 at 5. The complaint clearly raises the exercise claim, which, because plaintiff is a diabetic, is a medical issue, contrary to defendants' assertions. *See* Dckt. No. 16 at 4. Plaintiff alleges that he had a serious medical need requiring exercise. *Id.* Defendants further argue that plaintiff's allegations as to the amount of yard time have changed throughout the course of the litigation. However, facts often become clearer as litigation progresses, and this is not cause for the court to disregard them.

<u>Emergency Snack.</u> Defendants argue that they cannot be held liable for the alleged policy to deprive diabetic inmates of an emergency snack because no court has yet found this policy to be constitutionally deficient. Defendants fail, however, to alert the court to any determination that the policy is actually constitutional and is so across-the-board. Plaintiff has provided the court with evidence that defendant Roche promulgated such a policy. Dckt. No. 142 at 67. While defendants claim that diabetic inmates experiencing insulin shock can obtain glucose gel from custody staff (DUF 23), plaintiff responds that an inmate undergoing an insulin shock may be unable to speak let alone yell for help in such a situation. Dckt. No. 142 at 10. Defendants object that plaintiff offers an unqualified medical opinion. Dckt. No. 145-1 at 3.

## III. Appointment of Expert

Federal Rule of Evidence 706 authorizes the court to appoint an expert witness and apportion the fee among the parties. Where, as here, one party is indigent, the court has discretion to apportion the entire fee to the other side. *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated and remanded on other grounds by Helling v. McKinney*, 502 U.S. 903 (1991). For the reasons provided below, the court concludes that the circumstances of this case warrant the appointment of a neutral expert.

Several factors guide the court's determination that a neutral expert is necessary. First, and most importantly, the court considers whether the opinion of a neutral expert will promote accurate factfinding. *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1179 (E.D. Cal. 2011).

Additionally, the court may consider the ability of the indigent party to obtain an expert and the significance of the rights at stake in the case. *Id.* at 1182-84.

In this case, the summary judgment motion raises several issues that the court cannot determine without the help of a neutral expert, namely: (1) whether the standard diet in place at HDSP during the relevant time period provided adequate nutrition for diabetic inmates when unhealthy portions of food were removed; (2) whether a diabetic inmate could perform exercise adequate to maintain health in a prison cell of the dimensions described by plaintiff; and (3) whether a policy depriving diabetic prison inmates of emergency snacks in their cells places those inmates at risk of harm. While defendant Roche has opined on these issues, he is a party to this action and therefore his opinion may be biased. The court accordingly concludes that accurate determination of the facts in this case weighs heavily in favor of the appointment of a neutral medical expert who can opine on the three issues listed above.

Furthermore, plaintiff is an indigent prison inmate and, as such, faces significant barriers to obtaining an expert. The right at stake in this case – plaintiff's right to receive medical care that is not so reckless as to qualify as cruel and unusual punishment under the Eighth Amendment – is a significant right. Thus, all factors weigh in favor of appointment of a neutral physician with expertise in the treatment of diabetes to assist the court. Because plaintiff is indigent, the court exercises its discretion under Rule 706 to apportion the cost of this expert entirely to defendants, to be split evenly among them.

**IV.  Order**

Accordingly, it is hereby ORDERED that:

1. Within 21 days of the date of this order, the parties shall each submit to the court three nominees of physicians with expertise in the treatment of diabetes to potentially act as a neutral expert in this case. The court will select an individual from these lists to act as a neutral expert as provided in this order. Defendants shall pay the costs of the expert, split equally among them.

////

2. If plaintiff fails to submit a list of nominees, the court will select the expert solely from defendants' nominees.

3. Defendants' August 15, 2012 motion for summary judgment (Dckt. No. 134) is denied without prejudice to its renewal upon the filing of the expert's report. *See* Fed. R. Civ. P. 56(d).

Dated: January 24, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE