1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DARREN HENDERSON,

11             Plaintiff,                    No. 2:06-cv-1325 GEB EFB P

12        vs.

13   T. FELKER, et al.,                      ORDER DENYING APPOINTMENT OF A
                                             SECOND EXPERT, AND FINDINGS AND
14             Defendants.                   RECOMMENDATIONS FOR DENIAL OF
                                             PRELIMINARY INJUNCTION
15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Currently pending before the court are plaintiff's motions for appointment of an

18   "expert of corrections" and for a preliminary injunction.

19   **I.    Background**

20        This action proceeds on the verified amended complaint filed October 4, 2006.  Dckt. No.

21   16.  Claims currently remaining in the action are plaintiff's claims that defendants Dovey,

22   Felker, and Roche executed and enforced unconstitutional policies pertaining to the treatment of

23   diabetic inmates.  Dckt. No. 56 at 2.[1]  (Plaintiff's claims against other defendants and his claim

24   against defendant Roche for alleged failure to provide medication have been dismissed.  *Id.*)

25   _____

26        [1] Page numbers cited herein refer to those assigned by the court's electronic docketing
     system and not those assigned by the parties.

                                              1

1    Specifically, plaintiff alleges that defendant Dovey is the Director of Corrections for the

2    state of California and is responsible for "the overall operations" of each California prison,

3    including High Desert State Prison ("HDSP"), where plaintiff was confined at the time he filed

4    this action.  Dckt. No. 16 at 1-2.  Defendant Felker is the "superintendent" of HDSP and is

5    responsible for its operations and the welfare of its inmates.  *Id.* at 2.  Defendant Roche is a

6    medical doctor who was the Chief Medical Officer at HDSP at all times relevant to the

7    complaint.  *Id.*

8    According to plaintiff, defendants adopted or enforced policies that were deliberately

9    indifferent to his serious medical needs as a diabetic inmate.  Plaintiff describes his condition as

10   follows:

11       Plaintiff is an insulin depended [sic] diabetic with related complications, high
         blood pressure, a condition called neuropathy which causes poor blood flow, pain
12       and numbness in the legs and feet.  It also places me at high risk for heart disease,
         stroke, infection and amputation.  Because of my condition I require daily access
13       to a exercise yard [sic] to walk or run to increase the blood flow to my heart and
         legs.  I also require effective distribution of medications that improve and sustain
14       quality in life, a special diet prepared by a medically trained dietician, and a
         emergency plan [sic] to prevent hypoglycemia while traped [sic] in a cell
15       overnight.

16   *Id.* at 3.  Plaintiff alleges that he received such treatment in a prior institution but that, when he

17   was transferred to HDSP on August 11, 2005, the needed treatments (exercise, medication, diet,

18   and emergency plan) were stopped according to a screening policy in place at HDSP.  *Id.*  His

19   prescriptions for blood pressure and pain medication were discontinued.  *Id.*  No special diet was

20   provided, nor any emergency snack, because HDSP, per policy, does not provide special diets or

21   emergency snacks to diabetic inmates.  *Id.* at 3-4.  Further, HDSP policy only allowed inmates to

22   access the yard for 1.5 to 2 hours five times per month.  *Id.* at 4.

23   After complaining, plaintiff was seen by a doctor who prescribed blood pressure and pain

24   medication (enalapril and neurontin, respectively).  *Id.*  Plaintiff received the enalapril on August

25   26, 2005.  *Id.*  Plaintiff received the neurontin on September 5, 2005, but was only given enough

26   ////

2

1   for one month.  *Id.* at 5.  He had to wait over 30 days for a refill, suffering pain in his legs and

2   feet.  *Id.*

3        Plaintiff alleges that he developed an infection on one of his toes because of the lack of

4   exercise to increase blood flow to his legs and feet.  *Id.* at 6.

5        In sum, in the claims remaining in this action, plaintiff alleges that defendants are

6   responsible for several policies, which together prevented him from receiving adequate treatment

7   for his diabetes: (1) a policy to discontinue medications upon an inmate's transfer to HDSP; (2) a

8   policy resulting in the erratic distribution of neurontin; (3) a policy to deny diabetic inmates a

9   special diabetic diet; (4) a policy of inadequate yard-time for diabetic inmates; and (5) a policy

10  depriving diabetic inmates of an emergency snack to treat hypoglycemia.

11  **II.    Motion for Second Expert**

12       The court is in the process of appointing a neutral expert in the treatment of diabetes to

13  assist the court in determining certain issues raised by defendants' motion for summary

14  judgment.  Dckt. No. 148.  Plaintiff asks that the court appoint a second expert in the field of

15  corrections "so that the bases of the expert's opinion concerning out-of-cell exercise is supported

16  by real data."  Dckt. No. 157.

17       Federal Rule of Evidence 706 authorizes the court to appoint an expert witness and

18  apportion the fee among the parties.  Where, as here, one party is indigent, the court has

19  discretion to apportion the entire fee to the other side.  *McKinney v. Anderson*, 924 F.2d 1500,

20  1511 (9th Cir. 1991), *vacated and remanded on other grounds by Helling v. McKinney*, 502 U.S.

21  903 (1991).  For the reasons provided below, the court concludes that the circumstances of this

22  case do not warrant the appointment of the additional expert requested by plaintiff.

23  ////

24  ////

25  ////

26  ////

1    The court considers several factors in determining the necessity of a neutral expert.  First,

2  and most importantly, the court considers whether the opinion of a neutral expert will promote

3  accurate factfinding.  *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1179 (E.D. Cal. 2011).

4  Additionally, the court may consider the ability of the indigent party to obtain an expert and the

5  significance of the rights at stake in the case.  *Id.* at 1182-84.

6    The court finds that plaintiff's motion fails to demonstrate how an additional expert will

7  promote accurate factfinding.  Plaintiff appears to believe that such an expert would opine on

8  whether plaintiff's cell was too small for plaintiff to perform the kind of exercises he needs to

9  maintain health as a diabetic.  However, plaintiff has not demonstrated that an individual in the

10  corrections field would have the requisite knowledge to opine on the type of exercise a diabetic

11  must perform to maintain health and whether such exercise could have been performed in

12  plaintiff's cell.  Accordingly, the motion is denied.

13  **III.    Motion for Preliminary Injunction**

14    Plaintiff's motion for preliminary injunction complains that California State Prison, Los

15  Angeles County ("LAC") has discontinued his pain medication, failed to refer him to a

16  podiatrist, and failed to provide him proper footwear since his transfer there in 2012.  Dckt. No.

17  156.  He seeks an injunction to address these complaints.

18    A preliminary injunction will not issue unless necessary to prevent threatened injury that

19  would impair the courts ability to grant effective relief in a pending action.  *Sierra On-Line, Inc.*

20  *v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871

21  F.2d 863 (9th Cir. 1989).  A preliminary injunction represents the exercise of a far reaching

22  power not to be indulged except in a case clearly warranting it.  *Dymo Indus. v. Tapeprinter,*

23  *Inc.,* 326 F.2d 141, 143 (9th Cir. 1964).  A party seeking a preliminary in junction must

24  demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

25  in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

26  injunction is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir.

4

1   2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d

2   249 (2008)).  The Ninth Circuit has also held that the "sliding scale" approach it applies to

3   preliminary injunctions—that is, balancing the elements of the preliminary injunction test, so

4   that a stronger showing of one element may offset a weaker showing of another—survives

5   *Winter* and continues to be valid to the extent that is applies the showing that must be made

6   regarding the chance of success on the merits .  *Alliance for Wild Rockies v. Cottrell*, 622 F.3d

7   1045, 1050 (9th Cir. 2010).  "In other words, 'serious questions going to the merits,' and a

8   hardship balance that tips sharply toward the plaintiff can support issuance of an injunction,

9   assuming the other two elements of the *Winter* test are also met."   *Id.*  In cases brought by

10  prisoners involving conditions of confinement, any preliminary injunction "must be narrowly

11  drawn, extend no further than necessary to correct the harm the court finds requires preliminary

12  relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

13          Here, the injunction must be denied for the simple fact that it challenges conduct that is

14  not a subject of this action and took place long after this action was initiated in 2006.  Because

15  there is no pending claim regarding that conduct, necessarily plaintiff has failed to demonstrate

16  either a probability of success or even serious questions as to the merits on any such claim.  The

17  allegations contained in the motion for preliminary injunction are properly the subject of another

18  lawsuit and cannot be cannot be adjudicated in this action, where they cannot be properly

19  exhausted through the administrative appeals process and where the parties whom plaintiff seeks

20  to enjoin are not before the court.  *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir.

21  2002) (per curiam) and *Rhodes v. Robinson*, 621 F.3d 1002, 1004-07 (9th Cir. 2010) (together

22  holding that claims must be exhausted prior to the filing of the original or supplemental

23  complaint); *Jones v. Felker*, No. CIV S-08-0096 KJM EFB P, 2011 U.S. Dist. LEXIS 13730, at

24  *11-15 (E.D. Cal. Feb. 11, 2011).  Accordingly, plaintiff's motion for preliminary injunctive

25  relief must be denied.

26  ////

5

## IV.     Recommendation and Order

For the foregoing reasons, it is hereby ORDERED that plaintiff's March 22, 2013 motion for appointment of a second expert (Dckt. No. 157) is DENIED.

It is further RECOMMENDED that plaintiff's March 18, 2013 motion for preliminary injunction (Dckt. No. 156) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 9, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE